**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

JASON M.,[1]
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 2:25-cv-1058
Watson, J.
Litkovitz, MJ.

**REPORT AND**
**RECOMMENDATION**

Plaintiff Jason M. brings this action under 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Disability Insurance Benefits (DIB). This matter is before the Court on plaintiff's statement of errors (Doc. 8), the Commissioner's response in opposition (Doc. 10), and plaintiff's reply (Doc. 11).

## I. Procedural Background

In March 2023, plaintiff protectively filed an application for DIB alleging disability since October 1, 2020, due to left leg pain and numbness. (Tr. 242, 266). His application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Francine Serafin. Plaintiff and a vocational expert (VE) appeared by telephone and testified at the ALJ hearing on September 10, 2024. (Tr. 34-53). On October 24, 2024, the ALJ issued a decision denying plaintiff's application. (Tr. 14-29). This decision became the final decision of the Commissioner when the Appeals Council denied review on July 14, 2025. (Tr. 1-3).

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. § 423(d)(2).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)).  The claimant has the burden of proof at the first four steps of the sequential evaluation process.  *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548 (6th Cir. 2004).  Once the claimant establishes a prima facie case by showing an inability to

2

perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

1. [Plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2025.

2. [Plaintiff] has not engaged in substantial gainful activity since October 1, 2020, the alleged onset date (20 CFR 404.1571 et seq.).

3. [Plaintiff] has the following severe impairments: spondylosis, radiculopathy, borderline intellectual functioning, impulse control disorder, panic disorder, generalized anxiety disorder, and major depressive disorder (20 CFR 404.1520(c)).

4. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5. After careful consideration of the entire record, the undersigned finds that [plaintiff] has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he is capable of occasional climbing of ramps and stairs; never climbing ladders, ropes, or scaffolds; and occasional balancing, stooping, kneeling, crouching, and crawling. He should avoid exposure to all workplace hazards such as moving machinery or unprotected heights. He is capable of understanding and remembering simple work tasks that are not at an assembly line or production rate pace or involving any strict production quotas. He is capable of tolerating occasional interaction with supervisors, coworkers, or the general public.

6. [Plaintiff] is unable to perform any past relevant work (20 CFR 404.1565).[2]

7. [Plaintiff] was born [in] . . . 1975 and was 45 years old, which is defined as

---

[2] Plaintiff's past relevant work was as an industrial maintenance repairer, which was skilled, heavy exertion work that plaintiff actually performed at the very heavy exertion level. (Tr. 27, 47).

3

a younger individual age 18-49, on the alleged disability onset date (20 CFR 404.1563).

8. [Plaintiff] has at least a high school education (20 CFR 404.1564).

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

10. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 404.1569 and 404.1569a).[3]

11. [Plaintiff] has not been under a disability, as defined in the Social Security Act, from October 1, 2020, through the date of this decision (20 CFR 404.1520(g)).

(Tr. 19-29).

### C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a

---

[3] The ALJ relied on the VE's testimony to find that plaintiff would be able to perform the requirements of representative light, unskilled occupations such as cleaner/housekeeping (234,000 jobs in the national economy); cafeteria attendant (29,000 jobs in the national economy); and marker (107,000 jobs in the national economy). (Tr. 28, 48-49).

preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007).  In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination.  Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right."  *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D.  Specific Errors**

Plaintiff raises a single assignment of error: the ALJ failed to properly evaluate the opinion of Hugh A. Turner, Psy. D.

1.  Dr. Turner's opinion

Dr. Tuner completed a consultative psychological examination of plaintiff on August 23, 2023.  (Tr. 389-94).  As far as abnormal observations, Dr. Turner noted that plaintiff "appear[ed] to be significantly limited in his capacity to understand and report on situations or activities that may be important to him."  (Tr. 391).  Plaintiff's interview responses suggested that plaintiff "has limited fund of information[,]" "is unable to report out information that is beyond simply labeling a function[,]" and thus did "not appear to have the capacity to engage in anything other than rudimentary expression of status, feelings, or concerns."  (*Id.*).  Plaintiff's "expressive and receptive language skills did not appear adequate to meet his daily needs."  (*Id.*).  Plaintiff exhibited neutral mood with restricted affect.  (Tr. 392).  Plaintiff exhibited cognitive function issues, as he could not negotiate serial 7s, needed assistance with his fingers to engage serial 3s, and had trouble retaining 3 items after a five-minute delay.  (*Id.*).  Dr. Turner believed this was

consistent with a below average range of cognitive abilities and diagnosed him as borderline intellectual functioning with an educational problem (illiterate).  (*Id.*).  In summary, Dr. Turner found that plaintiff had "significant cognitive challenges[,]" was unable to use language to express himself in anything other than "rudimentary fashion[,]" and would likely require "a very limited lifestyle."  (Tr. 393).

For his functional assessment, Dr. Turner was unable to opine on plaintiff's ability to respond appropriately to supervision and coworkers in a work setting or to work pressures in a work setting.  (Tr. 393-94).  Dr. Turner opined that plaintiff's presentation did not present issues with remembering and carrying out instructions, maintaining attention and concentration, or maintaining persistence and pace to perform simple and simple multi-step tasks.  (Tr. 393).

### 2.  The ALJ's decision

With respect to Dr. Turner, the ALJ stated:

> Although Dr. Turner provided some explanation in support of the opinion, the undersigned finds this opinion is not persuasive.  The opinion is not consistent with [plaintiff]'s prior work that was considered skilled in nature.  Further, [plaintiff]'s treating source does not indicate a mental challenge to the degree alleged in the consultative evaluation as mental status examinations revealed intact memory, appropriate affect, good insight, normal fund of knowledge, intact attention span, and normal psychomotor behavior (Exhibit 5F).  Furthermore, [plaintiff] participated in the consultative physical examination and no such limits were noted as Dr. Schefft noted [plaintiff]'s intellectual functioning appeared normal (Exhibit 3F). Additionally, the undersigned notes that the claimant was capable and responsive in the hearing setting.

(Tr. 26).

### 3.  Analysis

Plaintiff first argues that the ALJ's discussion of the supportability of Dr. Turner's opinion was insufficient—namely, "[i]t was unclear why Dr. Turner's report was deemed not well supported."  (Doc. 8 at PAGEID 1360).  Plaintiff next challenges the ALJ's assessment of

6

the consistency of the opinion with other evidence in the record.  Plaintiff contends that it was improper to contrast Dr. Turner's opinion with the opinion of Paul Schefft, M.D., who provided a consultative examination of plaintiff's *physical* impairments.  (*See* Tr. 378-87).  Plaintiff also contends that it was improper to contrast Dr. Turner's opinion with plaintiff's ability to perform skilled work prior to his alleged onset date.  Finally, plaintiff argues that the ALJ looked only to mental status examinations inconsistent with Dr. Turner's opinion and ignored other records consistent with more limitation.

The Commissioner argues in response that ALJ did consider the supportability of the opinion—finding, in fact, that it was supported.  As to consistency, the Commissioner concedes that the ALJ's reliance on plaintiff's past skilled work was likely error, but argues that her decision in this regard was nevertheless based on substantial evidence.

In reply, plaintiff emphasizes that the ALJ was required to consider both the supportability and the consistency of Dr. Turner's opinion.  Plaintiff argues that the ALJ's cursory evaluation of the supportability factor does not allow this Court to trace her reasoning.

ALJs must adhere to agency regulations governing the evaluation of medical opinion evidence.  Under the regulations applicable to plaintiff's claims, the Commissioner will "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s),[4] including those from your medical sources."  20 C.F.R. § 404.1520c(a).  Rather, the Commissioner will consider the persuasiveness of medical opinions.  20 C.F.R. § 404.1520c(b).

---

[4] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim."  82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850. For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

In determining the persuasiveness of a medical opinion, the ALJ considers five factors: (1) supportability, (2) consistency, (3) relationship with the claimant, including length of treatment relationship, frequency of examinations, purpose of the treatment relationship, and examining relationship, (4) specialization, and (5) other factors that tend to support or contradict a medical opinion. 20 C.F.R. § 404.1520c(c)(1)-(5). The most important factors the ALJ must consider are supportability and consistency. 20 C.F.R. § 404.1520c(b)(2). With respect to the supportability factor, "[t]he more relevant the objective medical evidence[5] and supporting explanations presented by a medical source are to support his or her medical opinion(s) . . . the more persuasive the medical opinions . . . will be." 20 C.F.R. § 404.1520c(c)(1). Similarly, "[t]he more consistent a medical opinion(s) . . . is with the evidence from other medical sources and nonmedical sources in the claim, the more persuasive the medical opinion(s). . . ." 20 C.F.R. § 404.1520c(c)(2). The ALJ is required to "*explain* how [he/she] considered the supportability and consistency factors for a medical source's medical opinions" in the written decision. 20 C.F.R. § 404.1520c(b)(2) (emphasis added). Conversely, the ALJ "may, but [is] not required to, explain" how he/she considered the relationship, specialization, and other factors set forth in paragraphs (c)(3) through (c)(5) of the regulation. *Id.* However, where two or more medical opinions or prior administrative findings about the same issue are equally persuasive, the ALJ must articulate how he or she "considered the other most persuasive factors in paragraphs (c)(3) through (c)(5). . . ." 20 C.F.R. § 404.1520c(b)(3). Finally, the ALJ is not required to articulate how he or she considered evidence from nonmedical sources. 20 C.F.R. § 404.1520c(d).

---

[5] Objective medical evidence is defined as "signs, laboratory findings, or both." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

8

The ALJ's evaluation of Dr. Turner's opinion is supported by substantial evidence. Beginning with supportability, plaintiff's argument is premised on his position that the ALJ did not find Dr. Turner's opinion adequately supported.  In fact, however, the ALJ notes that Dr. Turner "provided some explanation in support of the opinion. . . ." (Tr. 26).  While the Sixth Circuit "has not specifically addressed the articulation required for an ALJ to adequately explain her consideration of the supportability and consistency factors," "meaningful judicial review exists—even if the ALJ provided only a cursory or sparse analysis—if the ALJ made sufficient factual findings elsewhere in the decision that support her conclusion." *Booker R. v. Comm'r of Soc. Sec. Admin.*, No. 3:22-cv-170, 2023 WL 4247312, at *4-5 (S.D. Ohio June 29, 2023) (construing supportability analysis from ALJ's comparison of medical opinion with "the physician's own findings and explanations").  *See also Lillian A. v. O'Malley*, No. 4:23-cv-4, 2024 WL 987571, at *2 (W.D. Ky. Mar. 7, 2024) (summarizing *Crum v. Comm'r of Soc. Sec.*, 660 F. App'x 449, 457 (6th Cir. 2016)) ("[I]t is sufficient for an ALJ's reasons for determining the consistency of a medical opinion to be found elsewhere in the decision[.]").

In addition to her explicit reference to supportability, the ALJ discussed objective findings by Dr. Turner supporting greater limitation elsewhere in her decision.  (*See* Tr. 21 and 24, referencing Tr. 391-92 (plaintiff's inability to recall two items after a five-minute delay, below average cognitive function, and limitation in expression through speech observed during the consultative examination)).  Plaintiff argues that the "ALJ left [the supportability analysis] open to interpretation suggesting that there was a lack of support [for Dr. Turner's opinion]. . . ." (Doc. 8 at PAGEID 1359).  This position, however, is simply at odds with the plain language and content of the ALJ's decision.

9

Turning to the consistency factor, and leaving aside the ALJ's concededly erroneous comparison with plaintiff's past skilled work (*see* Doc. 10 at PAGEID 1373), the ALJ offered three additional reasons for finding that Dr. Turner's opinion was not consistent with other record evidence.  First, the ALJ noted that mental status examinations by plaintiff's treating source, Mohamedlatif Saiyad, M.D., reflected intact memory, appropriate affect, good insight, normal fund of knowledge, intact attention span, and normal psychomotor behavior.  Second, the ALJ noted that physical consultative examiner Dr. Schefft had similar observations—also noting normal intellectual functioning.  Finally, the ALJ noted that her observations of plaintiff during the hearing were inconsistent with Dr. Turner's more extreme opinions.

Plaintiff argues that the ALJ's first reason does not pass muster because she referred to Dr. Saiyad's records generally, and some of his records support greater limitation.  (*See, e.g.*, Tr. 406 (sleep issues), Tr. 414-15 (issues with impulse control, depression, anxiety, and panic attacks), and Tr. 422-24 (marked or extreme limitations in several mental functioning areas)[6]).  But this argument in essence invites the Court to reweigh the evidence, which is not the province of the Court.  *See Dyson v. Comm'r of Soc. Sec.*, 786 F. App'x 586, 588 (6th Cir. 2019) ("This court does not weigh evidence, assess credibility, or resolve conflicts in testimony—that's the ALJ's job.") (citing *Crum v. Sullivan*, 921 F.2d 642, 644 (6th Cir. 1990)).  In addition, while the ALJ did not refer to specific records of Dr. Saiyad in the part of the decision where she evaluated Dr. Turner's opinion, the ALJ did so earlier in the opinion.  (*See* Tr. 24-25, referring to Tr. 399 and 405 (medications improving or stabilizing irritability and depression/anxiety symptoms); Tr.

---

[6] This record is Dr. Saiyad's Medical Source Statement.  The ALJ found his opinion "not persuasive" (Tr. 27), and plaintiff does not challenge this finding.  *See Watts v. Comm'r of Soc. Sec.*, No. 1:16-cv-319, 2017 WL 430733, at *11 (S.D. Ohio Jan. 31, 2017) (argument waived where plaintiff did not "develop it either legally or factually in the Statement of Errors") (report and recommendation), *adopted*, 2017 WL 680538 (S.D. Ohio Feb. 21, 2017).

10

401,[7] 407 (normal memory, attention span, and concentration); Tr. 416-17 (normal observations of constitution, thought process, associations, thought content, affect, judgment insight, memory, attention span/concentration, fund of knowledge, demeanor/attitude, and psychomotor behavior)).  The ALJ also noted records of other treating physicians inconsistent with greater limitation in this part of his decision.  (*See* Tr. 25, referring, e.g., to Tr. 488, 509, 516, 520, 523, 527, 536, 553, 563, and 565 (West Virginia University Medicine records reflecting normal memory, attention, and concentration)).

Plaintiff also argues that the ALJ improperly considered Dr. Schefft's observations regarding plaintiff's mental abilities, which were that plaintiff's "[i]ntellectual functioning appear[ed] normal during the examination" and his "[r]ecent and remote memory for medical events [wa]s good."  (Tr. 380).  But the Court is not aware of (and plaintiff does not cite) any case law suggesting that the ALJ may not consider such observations, particularly where they are only part of the evidence considered.  *Cf.* 20 C.F.R. § 404.1529 ("We will consider all of the evidence presented, including . . . evidence submitted by your medical sources. . . .").  Similarly, an ALJ does not err by relying on her personal observations of a claimant's demeanor if she also considers other evidence.  *See Barber v. Kijakazi*, No. 1:20-cv-0064, 2022 WL 209268, at *6 (M.D. Tenn. Jan. 24, 2022) (explaining that *Martin v. Sec'y of Health & Hum. Servs.*, 735 F.2d 1008 (6th Cir. 1984), held only that the ALJ "may not rely *exclusively*" on a claimant's demeanor at the hearing); *Littlefield v. Comm'r of Soc. Sec.*, No. 2:18-cv-12191, 2019 WL 4780939, at *14 (E.D. Mich. July 3, 2019) ("Because the ALJ here did not rely solely on her own observations, I suggest it was not error for her to consider them as one factor in her

---

[7] The ALJ appears to mistakenly reference "Exhibit 5F/4" instead of "5F/5" when noting records reflecting "intact memory."  (*See* Tr. 25).

analysis.") (report and recommendation), *adopted*, 2019 WL 4747040 (E.D. Mich. Sept. 30, 2019).  *See also* 20 C.F.R. § 404.1529 ("We will consider all of the evidence presented, including . . . observations by our employees. . . .").

In sum, the ALJ properly evaluated the supportability and consistency of Dr. Turner's opinion.  The ALJ's decision is therefore supported by substantial evidence.

### IT IS THEREFORE RECOMMENDED THAT:

1. Plaintiff's Statement of Errors (Doc. 8) be **OVERRULED** and the Commissioner's non-disability finding be **AFFIRMED**.

2. Judgment be entered in favor of the Commissioner and this case be closed on the docket of the Court.


Date: 3/30/2026

Karen L. Litkovitz
United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JASON M.,
      Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
      Defendant.

Case No. 2:25-cv-1058
Watson, J.
Litkovitz, MJ.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations.  This period may be extended further by the Court on timely motion for an extension.  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based in whole or in part upon matters occurring on the record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections **WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn*, 474 U.S. 140 (1985); *United States* v. *Walters*, 638 F.2d 947 (6th Cir. 1981).